BOARD OF POLICE COMMISSIONERS OF THE CITY OF NEW HAVEN ET AL. *v.* JOHN MAHER ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued June 10—decision released September 14, 1976

*Arnold J. Bai,* with whom were *Paul E. Pollock* and *Mary E. Sommer,* for the appellant (named plaintiff).

*W. Paul Flynn,* with whom, on the brief, was *Frank J. Raccio,* for the appellants (named defendant et al.).

*Robert W. Murphy,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (defendant Connecticut board of mediation and arbitration).

*Jackson T. King,* with whom, on the brief, was *Paul E. Farren,* for the appellee (defendant Paul McCormick).

House, C. J. This appeal is from a judgment of the Superior Court rendered in several actions which were consolidated for trial and appeal. While the cases are independent of the case of *Board of Police Commissioners* v. *White,* 171 Conn. 553, 370 A.2d 1070, which we also decide this day, the issues in all the cases are closely related and our decision in the *White* case is decisive of many of the issues raised on this appeal. Under the circumstances, we need not repeat as to those issues what we have said in the *White* case. In the present cases, the plaintiffs sought temporary and permanent injunctions restraining and prohibiting the defendants, New Haven Police Union Local No. 530 of the Connecticut Council of Police Unions No. 15, and seven individual policemen or former policemen, John Maher, Paul McCormick, Frederick Nugent, Bertram Martus, William Tyler, Paul Kaplowe and Louis Cavalier, from initiating or proceeding with any arbitration action before the defendant state board of mediation and arbitration or any other body. The plaintiffs are the board of police commissioners of the city of New Haven, hereinafter referred to as police commissioners, and the city of New Haven. The cases were presented to the trial court as a consolidated action and counsel closed the pleadings so that it was heard on the question of the issuance of a permanent injunction. It was presented to the trial court on a stipulation of facts, memoranda of law, and oral argument.

The basic facts material to this appeal are identical to those recited in the *Board of Police Commissioners* v. *White,* supra, and may be summarized as follows: The plaintiff board of police commissioners is an administrative body whose six members are appointed pursuant to the charter of the

city of New Haven. The charter charges the police commissioners with the administration, operation and control of the department of police service of the city of New Haven. Prior to institution of the various suits consolidated here, the seven individual defendants, policemen or former policemen, were police officers in the city of New Haven. Biago DiLieto, in his capacity as chief of police of the city of New Haven, presented against the respective police officers various charges of misconduct arising out of their duties as officers. Following hearings before the plaintiff board of police commissioners or before the chief of police, each officer was found guilty of the charges against him and received disciplinary sanction which, for some, included discharge. All the officers individually initiated grievance proceedings pursuant to article 3 of their union agreement with the city of New Haven and, with the defendant union, are seeking arbitration of their grievances before arbitrators appointed by the defendant state board of mediation and arbitration. At no time has the plaintiff board of police commissioners notified the labor commissioner in writing of its willingness to submit the grievances to arbitration. As in the *White* case, the police commissioners and the city of New Haven brought actions seeking to enjoin the defendants from initiating or proceeding with the proposed arbitration. The court in each case, as had the court in the *White* case, rendered judgment for the defendants and denied the plaintiffs' prayers for injunctive relief.

From these judgments the plaintiffs have appealed, assigning as error the reaching of certain conclusions and the overruling of their claims of law. In view of our decision in *Board of Police*

*Commissioners* v. *White,* supra, which decided adversely to the same plaintiffs' identical assignments of error, we deem it necessary now to discuss only the single additional issue raised here by the plaintiffs' assigned error in the court's conclusion that the defendant union and the city of New Haven, by contract, have conferred on the defendant board of mediation and arbitration the authority to arbitrate grievances concerning disciplinary action against police officers and by the defendants' assigned error in the court's conclusion that the "Board of Mediation and Arbitration does not have power under § 7-472 of the General Statutes to arbitrate grievances." The question of the jurisdiction of the board of mediation and arbitration to act in the premises was not decided by the trial court in the *White* case because it was not pleaded and, accordingly, it was not considered in the appeal of that case.

Section 7-472[1] of the General Statutes provides in pertinent part: "The services of the state board of mediation and arbitration shall be available . . . for purposes of mediation of grievances . . . and for purposes of arbitration of disputes over the interpretation or application of the terms of a written agreement." The defendants claim, contrary to the decision of the trial court, that the lan-

---

[1] "[General Statutes] Sec. 7-472. MEDIATION BY STATE BOARD OF MEDIATION AND ARBITRATION. (a) The services of the state board of mediation and arbitration shall be available to municipal employers and employee organizations for purposes of mediation of grievances or impasses in contract negotiations and for purposes of arbitration of disputes over the interpretation or application of the terms of a written agreement and, if such service is requested by both the municipal employer and the employee organization, for purposes of arbitration of impasses in contract negotiations. Whenever any impasse in contract negotiations is submitted to arbitration, the decision of the arbitration panel or arbitrator shall be rendered

guage of § 7-472, its legislative history, and the past actions of the defendant board in arbitrating similar grievances all support a conclusion that the statute grants the defendant board authority to arbitrate all the grievances. The fact that § 7-472 contains two separate clauses, one pertaining to mediation and the other to arbitration is significant. The provision concerning mediation permits "mediation of grievances or impasses in contract negotiations." The provision concerning arbitration permits "arbitration of disputes over the interpretation or application of the terms of a written agreement" and "if such service is requested by both the municipal employer and the employee organization, for purposes of arbitration of impasses in contract negotiations." This language clearly indicates a legislative intent not to authorize the arbitration of grievances except as they may apply to disputes over the interpretation or application of the terms of a written agreement or, by agreement, in cases of impasses in contract negotiations. See *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 578, 295 A.2d 526; *State ex rel. Barlow* v. *Kaminsky,* 144 Conn. 612, 620, 136 A.2d 792.

The report of the interim commission to study collective bargaining by municipalities, published in February, 1965, served as a basis for drafting the

no later than twenty days prior to the final date by which time the budget-appropriating authority of the municipality is required to adopt its budget or ten days after the close of the arbitration hearing, whichever is later, provided that in no case shall such decision be rendered later than five days prior to such final budget adoption date. Nothing contained herein shall prevent any agreement from being entered into in accordance with the provisions of subsection (e) of section 7-474. (b) Nothing in this section is intended to prevent the use of other arbitration tribunals in the resolution of disputes over the interpretation or application of the terms of written agreements between municipal employers and employee organizations."

Municipal Employees Relation Act (MERA), Public Acts 1965, No. 159, and sheds further light on the legislative intent. *State ex rel. Pettigrew* v. *Thompson,* 135 Conn. 228, 233–34, 63 A.2d 154. The language of § 7-472 relative to arbitration is identical to that recommended in the report (p. 25). Significantly, the report also states (p. 16): "The arbitration service of the Board would be made available to serve as the terminal point in a grievance procedure. Such service would require the parties to agree in advance to request the Board to serve as the arbitrator. Absent such joint agreement, the Board would have no authority to arbitrate." Hence, the legislative history of the MERA also does not support the defendants' claim that the authority to arbitrate arises from § 7-472, although the clear indication, as we later note, is that the board may arbitrate if the authority is conferred by the parties involved.

Finally, the mere fact that the defendant board has arbitrated such matters in the past, while evidence for consideration, is not proof that it properly did so under the authority of the statute. So far as we have been able to ascertain, there has been no judicial decision on this point.

To the defendants' contention that the statutory authority of the board of mediation and arbitration to arbitrate disputes over the interpretation or application of the terms of a written agreement is sufficiently broad to encompass the grievances involved in the present cases, the trial court replied in its memorandum of decision: "The court does not agree. Certainly whether a particular officer was guilty of misconduct, or of falsifying an arrest report, or of refusing to take a polygraph examination, or of answering falsely a question on a ques-

tionnaire, or of failing to remain at his residence under a claim of illness, or of failing to extend proper courtesy and respect to a superior, or of leaving an assigned territory without authorization, all involve questions of fact as to what the particular officer did. None involve questions of what the agreement means or how to apply it." We find no error in the conclusion of the trial court that the defendant board of mediation and arbitration does not have authority under the provisions of § 7-472 of the General Statutes to arbitrate such claims of grievance.

Notwithstanding this conclusion, the court did find, contrary to the plaintiffs' claims, that the union contract with the city of New Haven does confer on the defendant board of mediation and arbitration the authority to arbitrate grievances concerning disciplinary action against a New Haven police officer. The board of mediation and arbitration was created by §§ 31-91 to 31-100 of the General Statutes. Section 31-91 established the board and § 31-97 provided that the parties could submit a grievance or dispute to the board. Because the collective bargaining agreement has clearly defined a disciplinary dispute as a grievance[2] and, further, because the four-step grievance procedure[3] requires

[2] Article 3 (B) of the agreement ([Grievance Procedure] Definition) states: "A grievance for the purpose of this procedure, shall be considered to be an employee or Union complaint concerned with: 1. Discharge, suspension or other disciplinary action. . . . 4. Matters related to the interpretation and application of the Articles and Sections of this Agreement."

[3] Article 3 (C): "[Grievance] Procedure . . . STEP FOUR If the complainant and his representative, if represented, are not satisfied with the decision rendered, he or his representative may submit the grievance to the Connecticut State Board of Mediation and Arbitration, and the decision rendered by the arbitrator(s) shall be final and binding upon both parties. . . . (e) The arbitrator(s) selected

arbitration under the fourth step, the trial court correctly concluded that the bargaining agreement conferred on the defendant board the authority to arbitrate disciplinary grievances. *International Brotherhood* v. *Trudon & Platt Motor Lines, Inc.,* 146 Conn. 17, 21, 147 A.2d 484; *Pratt, Read & Co.* v. *United Furniture Workers,* 136 Conn. 205, 209, 70 A.2d 120. This is especially true since any "[d]oubts [concerning arbitrability] should be resolved in favor of coverage." *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 583, 80 S. Ct. 1347, 4 L. Ed. 2d 1409; *International Union* v. *General Electric Co.,* 148 Conn. 693, 701, 702, 174 A.2d 298.

This authority to arbitrate, however, is strictly limited. The limits of authority are set by the provisions of the bargaining agreement itself as the scope of the matter to be considered by the arbitrators is also limited by the submission. *Gary Excavating, Inc.* v. *North Haven,* 164 Conn. 119, 121, 122, 318 A.2d 84; *Hudson Wire Co.* v. *Winsted Brass Workers Union,* 150 Conn. 546, 191 A.2d 557; *Local 1078* v. *Anaconda American Brass Co.,* 149 Conn. 687, 689, 183 A.2d 623. Whether it is by coincidence or design we cannot know, but the bargaining agreement by which authority is conferred by the parties on the board of mediation and arbitration to arbitrate any grievance strictly limits that authority in almost the same words of limitation used in § 7-472 of the General Statutes. As we have noted, the governing statutory limitation is to

in accordance with the procedure described in item (c) of this step of the procedure shall conduct a hearing at which the facts and arguments relating to the dispute shall be heard. *The arbitrator(s) jurisdiction to make an award shall be limited by the submission and confined to the interpretation and/or application of the provisions of this Agreement. . . ."* (Emphasis supplied.)

"arbitration of disputes over the interpretation or application of the terms of a written agreement." The agreement of the parties in article 3, "Grievance Procedure," paragraph C, step four, paragraph (e) expressly provides: "The arbitrator(s) jurisdiction to make an award shall be limited by the submission and confined to the interpretation and/or application of the provisions of this Agreement."

We conclude that within these narrow limits set by the contract of the parties, the board of mediation and arbitration is authorized to arbitrate a grievance concerning disciplinary action against a New Haven police officer. Accordingly, we find no error in the judgment of the trial court denying the petitions for injunctions.

There is no error.

In this opinion the other judges concurred.